*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CHRISTOPHER JAMES LONG,

Defendant-Appellant.

UNPUBLISHED
January 21, 2025
1:36 PM

No. 365990
Wayne Circuit Court
LC No. 18-000271-01-FC

Before: BOONSTRA, P.J., and K. F. KELLY and YOUNG, JJ.

PER CURIAM.

Defendant appeals by right his bench trial convictions of first-degree premeditated murder, MCL 750.316(a)(1); being a felon in possession of a firearm (felon-in-possession), MCL 750.224f; and carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to life imprisonment without the possibility of parole (LWOP) for his first-degree murder conviction, a prison term of three to five years for his felon-in-possession conviction, and a prison term of two years for his felony-firearm conviction. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On the night of November 17, 2017, Regenia Winfield looked out her window on Lappin Street in Detroit and observed Derrick Berrien standing outside the home of his cousin, Demetrius McGruder. Berrien was with Montic Kennedy and another man she did not know. Winfield testified that the other man was carrying a gun. Winfield moved away from the window when she saw the gun. Shortly thereafter, Winfield heard gunfire. McGruder, who also heard gunfire, rushed outside his home to find Berrien lying on the ground bleeding. He had been shot six times. McGruder saw defendant, whom McGruder knew as "Ice," and Kennedy standing near defendant's Mercedes Benz. McGruder overheard Kennedy say, "Ice, you a dirty a** n****r." Berrien told McGruder to go back inside because it was unsafe to be outside. McGruder did so.

Winfield and McGruder both observed defendant and Kennedy help Berrien to his feet and put him in the front-passenger seat of defendant's car. When they drove away, McGruder was inside his home attempting to clean blood from Berrien's cell phone. After defendant's car drove

-1-

away, McGruder answered a call on Berrien's cell phone from defendant's cell phone. Defendant told McGruder not to tell anyone that defendant was with Berrien when he was shot. McGruder believed that Berrien was being taken to get help, so he did not contact anyone about the shooting. Berrien's mother, Michelle Berrien-Wadley, testified that someone told her that Berrien had been shot. She called and visited local hospitals looking for Berrien, but did not find him. She eventually contacted defendant and asked him where he had taken Berrien. Defendant first told Berrien-Wadley that he had taken Berrien to a hospital, but after Berrien-Wadley told him that she had checked all of the hospitals, defendant changed his story, claiming that he had taken Berrien to a "safe house" at the intersection of Duchess Street and Moross Avenue. Berrien-Wadley had checked that location and knew that Berrien wasn't there. Defendant then ended the call. Berrien-Wadley contacted the Detroit Police. When they arrived, Berrien-Wadley called defendant again with the responding officers listening. Defendant then provided several locations where he claimed Berrien could be found, but when Berrien-Wadley and police officers checked those locations, they did not find Berrien.

Berrien's body was found near the intersection of Malcolm and Olga Streets during the early morning hours of the next day. In addition to the six nine-millimeter gunshot wounds he had sustained on Lappin Street, Berrien had been shot an additional time in the head with a .45 caliber bullet. Dr. David Moons, a forensic medical examiner, testified that six of Berrien's gunshot wounds would not have been immediately fatal, either alone or together, but that the seventh gunshot wound to the head would have been immediately fatal on its own. Defendant was initially arrested and charged in November 2017. On March 16, 2018, the trial court granted his motion to quash the bindover and dismissed the charges. The prosecution appealed, and this Court reversed and remanded for defendant to be bound over for trial.[1] Defendant was remanded back to jail when the trial court reopened the case in July 2019.

After a lengthy delay caused by the COVID-19 pandemic, defendant was tried over three days spanning from December 8, 2022 to March 31, 2023. His defense focused on a lack of proof of identity. In other words, defendant did not dispute that Berrien had been murdered, but he claimed he that did not do it. The trial court found defendant guilty and sentenced him as described. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was insufficient evidence to sustain his conviction of first-degree premeditated murder. We disagree.

> Challenges to the sufficiency of the evidence are reviewed de novo. In evaluating defendant's claim regarding the sufficiency of the evidence, this Court reviews the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt. . . . Circumstantial evidence is evidence of a fact, or a chain of facts or circumstances, that, by indirection or inference, carries conviction to the

---

[1] *People v Long*, unpublished per curiam opinion of the Court of Appeals, issued February 26, 2019 (Docket No. 342877).

mind and logically or reasonably establishes the fact to be proved. Circumstantial evidence may sustain criminal convictions, but the circumstantial proof must facilitate reasonable inferences of causation, not mere speculation. [*People v Xun Wang*, 505 Mich 239, 251; 952 NW2d 334 (2020) (quotation marks, citations, and alteration omitted).]

"Findings of fact by the trial court may not be set aside unless they are clearly erroneous." *People v Robinson*, 475 Mich 1, 5; 715 NW2d 44 (2006). "A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *People v Chandler*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368736); slip op at 3 (quotation marks and citation omitted).

"Bench trials stand in sharp contrast to jury trials. A jury is required to consider all the evidence and to render a unanimous verdict, without the need for explanation." *Xun Wang*, 505 Mich at 250. But in a bench trial, "the trial court is obligated to 'find the facts specially, state separately its conclusions of law, and direct entry of the appropriate judgment. The court must state its findings and conclusions on the record or in a written opinion made a part of the record.' " *Id.*, quoting MCR 6.403. Our Supreme Court has recognized that this extra step required of a trial court during a bench trial allows for reviewing courts to have "greater insight into the specific evidence found by the trial court to support verdicts in bench trials." *Xun Wang*, 505 Mich at 250. Despite this additional insight, this Court still must "review[] the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *Robinson*, 475 Mich at 5. "The prosecution need not negate every theory consistent with innocence, but is obligated to prove its own theory beyond a reasonable doubt, in the face of whatever contradictory evidence the defendant may provide." *People v Chapo*, 283 Mich App 360, 363-364; 770 NW2d 68 (2009).

The elements of first-degree premeditated murder "are (1) the intentional killing of a human (2) with premeditation and deliberation." *People v Oros*, 502 Mich 229, 240; 917 NW2d 559 (2018) (quotation marks and citation omitted); see also *People v Jackson*, 292 Mich App 583, 588; 808 NW2d 541 (2011) (citations and quotation marks omitted). Our Supreme Court has stated that "to premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem." *Oros*, 502 Mich at 240 (quotation marks, citation, and alteration omitted). "Premeditation and deliberation require sufficient time to allow the defendant to take a second look." *Jackson*, 292 Mich App at 588 (citations and quotation marks omitted).

"Identity is an essential element of every crime." *People v Fairey*, 325 Mich App 645, 649; 928 NW2d 705 (2018). "[T]his Court has stated that positive identification by witnesses may be sufficient to support a conviction of a crime," and that "[t]he credibility of identification testimony is a question for the trier of fact that we do not resolve anew." *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). A perpetrator's identity can be established by evidence that is entirely "circumstantial and sometimes requires reliance on an inference founded on an inference . . . ." *People v Bass*, 317 Mich App 241, 264; 893 NW2d 140 (2016).

In this case, defendant does not challenge the evidence that Berrien was murdered, or that the murder was premeditated; rather, he argues that the evidence at trial was insufficient to prove his identity as Berrien's killer. We disagree. From the evidence presented at trial, it could

reasonably be inferred that defendant shot Berrien six times on Lappin Street. He was the only person seen with a gun by any witness. Further, when McGruder came outside, he heard Kennedy say, "Ice, you a dirty a** n****r." The trial court found this to be highly probative circumstantial evidence that defendant had fired the shots, six of which struck Berrien's body. The bullets and spent shell casings found near the scene of the shooting on Lappin Street were all from a nine-millimeter handgun. When the police searched defendant's home, they found an empty nine-millimeter magazine stashed in a heating vent. The trial court's finding that defendant had shot Berrien on Lappin Street was not clearly erroneous. *Robinson*, 475 Mich at 5.

Nevertheless, and as the trial court recognized, the shooting on Lappin Street did not result in Berrien's death. The trial court found that defendant drove the wounded Berrien to the intersection of Malcolm and Olga Streets. This finding was supported by substantive evidence, including testimony that Berrien had been placed into defendant's car and DNA evidence from defendant's front-passenger seat. The cell-tower data also supported the conclusion that defendant and Kennedy traveled to the area where Berrien's body was found before returning to Lappin Street. Both McGruder and Winfield saw Berrien get into the front-passenger seat of defendant's car. This evidence permitted the reasonable inference that defendant drove Berrien and Kennedy to Malcolm and Olga Streets after shooting Berrien on Lappin Street. As a result, the trial court did not clearly err in so finding. *Id.*

The trial court also found that defendant fired the fatal shot into Berrien's head after arriving at Malcolm and Olga Streets, based on circumstantial evidence. See *Bass*, 317 Mich App at 264. Because defendant drove Berrien to the area where he was killed, defendant had the opportunity to murder him. In fact, defendant's opportunity to murder Berrien was enhanced by the chosen location of the shooting, which a witness described as a substantially abandoned area of Detroit. "Evidence of opportunity is logically relevant in a prosecution for murder." *People v Unger*, 278 Mich App 210, 224; 749 NW2d 272 (2008).

The trial court also noted defendant's deceitful behavior after the shootings in finding that defendant was the person who had killed Berrien. "Conflicting statements tend to show a consciousness of guilt and a jury may infer consciousness of guilt from evidence of lying or deception." *People v Dixon-Bey*, 321 Mich App 490, 509-510; 909 NW2d 458 (2017) (brackets, citations, and quotation marks omitted). Defendant asked McGruder to lie to police about defendant's presence when Berrien was shot. According to McGruder, defendant asked McGruder to lie because defendant was on parole. However, the prosecution admitted evidence showing that defendant was not on parole at the time of the shooting. Therefore, defendant both asked McGruder to lie on defendant's behalf and lied to McGruder about the reason the lie was necessary. Defendant also gave false and contradictory stories to Berrien-Wadley and police concerning where he had taken Berrien after leaving Lappin Street. Defendant's deceitful behavior after the shooting supports the inference that he was the person who had killed Berrien. *Id.* After all, if defendant truly did not kill Berrien and had dropped him off somewhere to receive medical attention, he would have had no reason to lie to Berrien-Wadley about the location, especially before she involved police.

The trial court also considered whether the only other person who had an apparent opportunity to shoot and kill Berrien—Kennedy—was the person who had done so. We conclude that the trial court did not clearly err in finding that Kennedy was not the shooter. *Robinson*, 475

-4-

Mich at 5. McGruder heard Kennedy speak ill of defendant once McGruder got outside after hearing the gunfire. This testimony permitted an inference that Kennedy was upset about the shooting, which indicated that defendant was the shooter on Lappin Street. Defendant was also the only person observed in possession of a handgun. Therefore, the trial court was permitted to infer that defendant fired the final shot that killed Berrien. *Id.*

In sum, there was significant and substantive circumstantial evidence supporting defendant's identity as the person who committed first-degree premeditated murder. To the extent defendant suggests that the trial court erred because it did not rely on eye-witness testimony to establish identity, direct evidence of identity is not required for a conviction. *Bass*, 317 Mich App at 264 (holding that a perpetrator's identity can be established by evidence that is entirely "circumstantial and sometimes requires reliance on an inference founded on an inference"). Moreover, the prosecution was not required to entirely negate the possibility that Kennedy had shot Berrien the final time, but needed only to provide sufficient evidence to support its own theory. *Chapo*, 283 Mich App at 363-364 ("The prosecution need not negate every theory consistent with innocence, but is obligated to prove its own theory beyond a reasonable doubt, in the face of whatever contradictory evidence the defendant may provide."). The prosecution presented sufficient evidence to support defendant's guilt beyond a reasonable doubt, and the trial court made adequate findings on the basis of that proof. *Robinson*, 475 Mich at 5.

## III. SPEEDY TRIAL

In his Standard 4 brief,[2] defendant argues that his constitutional right to a speedy trial was violated as a result of the lengthy delay between his arrest and the start of his trial. We disagree.

"A defendant must make a formal demand on the record to preserve a speedy trial issue for appeal." *People v Cain*, 238 Mich App 95, 111; 605 NW2d 28 (1999) (quotation marks and citation omitted). Defendant did not do so in this case. As a result, this argument is unpreserved. *Id.* Generally, when preserved, "[w]hether a defendant was denied his constitutional right to a speedy trial is a mixed question of fact and law. We review trial court factual findings under the clearly erroneous standard." *People v Jones*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 365590); slip op at 3 (quotation marks and citation omitted). "We review constitutional questions of law de novo." *Id.* (quotation marks and citation omitted). But "[u]npreserved constitutional claims are reviewed for plain error." *People v Hughes*, 506 Mich 512, 523; 958 NW2d 98 (2020). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To show that a defendant's substantial rights were affected, there must be "a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id.* "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *People v Randolph*, 502 Mich 1, 10; 917 NW2d 249 (2018) (quotation marks and citation omitted).

---

[2] A supplemental appellate brief filed by a criminal defendant *in propria persona* under Supreme Court Administrative Order No. 2004-6, Standard 4.

"Both the United States Constitution and the Michigan Constitution guarantee a criminal defendant the right to a speedy trial." *People v Waclawski*, 286 Mich App 634, 665; 780 NW2d 321 (2009), citing US Const, Am VI; Const 1963, art 1, § 20. "We enforce this right both by statute and by court rule." *People v Williams*, 475 Mich 245, 261; 716 NW2d 208 (2006), citing MCL 768.1; MCR 6.004(A). "[T]he federal and state constitutions and Michigan statutory law guarantee criminal defendants a speedy trial without reference to a fixed number of days." *People v Rivera*, 301 Mich App 188, 193; 835 NW2d 464 (2013) (quotation marks and citation omitted). "Michigan courts apply the four-part balancing test articulated in *Barker v Wingo*, 407 US 514; 92 S Ct 2182; 33 L Ed 2d 101 (1972), to determine if a pretrial delay violated a defendant's right to a speedy trial." *Cain*, 238 Mich App at 112. The four factors are: "(1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *Williams*, 475 Mich at 261-262.

The first factor is the length of the delay. "The time for judging whether the right to a speedy trial has been violated runs from the date of the defendant's arrest." *Rivera*, 301 Mich App at 193 (quotation marks and citation omitted). "A delay of more than eighteen months is presumed to be prejudicial and the burden is on the prosecution to prove lack of prejudice." *People v Simpson*, 207 Mich App 560, 563; 526 NW2d 33 (1994). "Under the *Barker* test, 'the presumptively prejudicial delay triggers an inquiry into the other factors to be considered in the balancing of the competing interests to determine whether a defendant has been deprived of the right to a speedy trial.' " *Williams*, 475 Mich at 262, quoting *People v Wickham*, 200 Mich App 106, 109-110; 503 NW2d 701 (1993). "[T]here is no set number of days between a defendant's arrest and trial that is determinative of a speedy trial claim." *Waclawski*, 286 Mich App at 665.

When calculating the length of the delay, the relevant time period is from the time of arrest to the beginning of trial. *Id.* From the date of defendant's arrest, November 20, 2017, to the date his trial began, December 8, 2022, slightly more than 60 months passed. Because the delay between arrest and trial was longer than 18 months, prejudice is presumed, requiring an inquiry into the other factors to determine if the presumption may be rebutted. *Williams*, 475 Mich at 262; *Waclawski*, 286 Mich App at 666 ("[B]ecause the delay in this case is presumptively prejudicial, it is necessary for us to examine the remaining factors.").

The second factor is the reason or reasons for the delay. "In assessing the reasons for delay, this Court must examine whether each period of delay is attributable to the defendant or the prosecution." *Id.* "Although delays inherent in the court system, e.g., docket congestion, are technically attributable to the prosecution, they are given a neutral tint and are assigned only minimal weight in determining whether a defendant was denied a speedy trial." *Williams*, 475 Mich at 263 (quotation marks and citation omitted). Lengthier delays are more tolerable for more complex cases. *Barker*, 407 US at 530-531.

As noted, there was slightly over 60 months between defendant's arrest and his trial. This delay can be divided into several periods. Defendant was arrested on November 20, 2017, and he remained in jail awaiting trial until his bindover was quashed and the case was dismissed on March 16, 2018, a four-month delay. There was no apparent cause for this delay other than issues "inherent in the court system . . . ." *Williams*, 475 Mich at 263. As a result, these four months of the delay are attributable to the prosecution, though in a neutral tint. *Id.*

The case was then delayed from March 16, 2018 until July 16, 2019, while the prosecution appealed the dismissal. As summarized above, the prosecution's appeal was successful because this Court reversed the order quashing the bindover and dismissing the case. The delay from the dismissal to the reinstatement of the case was 15 months. Delays caused by a successful interlocutory appeal must be removed from the speedy-trial calculus entirely. See *Waclawski*, 286 Mich App at 667, quoting *People v Missouri*, 100 Mich App 310, 321; 299 NW2d 346 (1980). In other words, a delay caused by a successful interlocutory appeal is "not assign[ed] [] any weight in favor of either the prosecutor or defendant." *Waclawski*, 286 Mich App at 667. Accordingly, the 15-month delay between dismissal and reinstatement does not weigh against either party. *Id*.

After the case was reopened on July 16, 2019, the trial was scheduled to begin on November 11, 2019. This four-month delay is attributable to the prosecution in a neutral tint because it is "inherent in the court system . . . ." *Williams*, 475 Mich at 263. On November 11, 2019, the trial was adjourned until March 30, 2020, a delay of an additional $4^1/_2$ months. The trial was delayed because of some newly revealed evidence. The trial court noted that both parties had requested and stipulated to an adjournment. When a defendant stipulates to a delay, that delay is attributable to the defense. *People v Crawford*, 232 Mich App 608, 613; 591 NW2d 669 (1998); *People v Gilmore*, 222 Mich App 442, 460; 564 NW2d 158 (1997).

The next delay was from March 30, 2020—the date of the rescheduled trial—until October 14, 2022, which was when defendant stipulated to a bench trial and moved for an adjournment of trial. This was a delay of $30^1/_2$ months. Defendant acknowledges that this delay was caused by the COVID-19 pandemic, but claims that it should weigh against the prosecution because pandemics are reasonably foreseeable. However, in *People v Smith*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 362114); slip op at 5, this Court expressly held that "delays caused by the COVID-19 pandemic are not attributable to the prosecution for purposes of a speedy-trial claim." Given this Court's decision in *Smith*, the delays in the present case caused by the COVID-19 pandemic were not attributable to the prosecution. *Id*. at ___; slip op at 6. Defendant attempts to escape this conclusion by claiming that his case is special because he agreed to waive his right to a jury trial and proceed with a bench trial. This waiver, though, did not occur until October 14, 2022, which is not being counted as part of the COVID-19 delays for reasons discussed below. As a result, this argument lacks merit. *Id*.

The final delay ranged from October 14, 2022 until trial began on December 8, 2022—a delay of two months. This delay was caused when defendant moved for an adjournment after waiving his right to a trial by jury. The trial court granted the adjournment. As a result, this delay is attributable to the defense. *Waclawski*, 286 Mich App at 666.

To summarize, there was a 60-month delay between defendant's arrest and the commencement of trial. Of those 60 months, $45^1/_2$ were not attributable to either party because they were caused by a successful interlocutory appeal and the COVID-19 pandemic, $6^1/_2$ months were attributable to the defense, and only eight months were attributable to the prosecution. All of the delays attributable to the prosecution related to issues inherent in the judicial process, and as a result, must be considered in a neutral tint. An eight-month delay attributable to the prosecution in a neutral tint is insufficient to support defendant's claim of a speedy trial violation. See *Smith*, ___ Mich App at ___; slip op at 6 ("In total, about seven or eight months of the delay

in this case was attributable, neutral tint or otherwise, to the prosecution. . . . Thus, the reasons for delay do not support Smith's speedy-trial claim.").

The third factor requires consideration of whether defendant asserted his right to a speedy trial during the trial court proceedings. *Williams*, 475 Mich at 261-262. There is no dispute that defendant did not do so. As a result, this factor weighs against him. *Id.*

The fourth and final factor to be considered is prejudice to defendant caused by the delay. "There are two types of prejudice which a defendant may experience, that is, prejudice to his person and prejudice to the defense." *Williams*, 475 Mich at 264 (quotation marks and citation omitted). The United States Supreme Court has stated that "unreasonable delay between formal accusation and trial threatens to produce more than one sort of harm, including oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the [accused's] defense will be impaired by dimming memories and loss of exculpatory evidence." *Doggett v United States*, 505 US 647, 654; 112 S Ct 2686; 120 L Ed 2d 520 (1992) (quotation marks and citation omitted; alteration in original). The latter type, "[p]rejudice to the defense[,] is the more serious concern, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Williams*, 475 Mich at 264. However, our Supreme Court has held that "the prejudice prong of the *Barker* test may properly weigh against a defendant incarcerated for an even longer period if his defense is not prejudiced by the delay." *Williams*, 475 Mich at 264, citing *People v Chism*, 390 Mich 104, 115; 211 NW2d 193 (1973). "But in considering prejudice, a reviewing court should look for examples about how the delay between arrest and trial harmed the defendant's ability to defend against the charges." *Smith*, ___ Mich App at ___; slip op at 6.

As noted, prejudice is presumed in this case because of the 60-month length of the delay. *Id.* at ___; slip op at 3, 6. Defendant was not in jail for the 15 months between when his case was dismissed and then reinstated. While this lessened personal prejudice, he still was in jail for 75% of the delay, which weighs in favor of a finding of prejudice. *Id.* Even so, the "[m]ost important [part of] our review, [] is that the delay did not create any identifiable prejudice to the defense." *Id.* Defendant's sole allegation of prejudice to his defense is that witnesses' memories had faded by the time of trial. In support of this claim, defendant only cites to McGruder's testimony, primarily focusing on his statement that the shooting on Lappin Street occurred in broad daylight at about 5:00 p.m. or 6:00 p.m., while other available evidence, including cell phone records, indicated that the shooting occurred after 8:00 p.m., and Winfield had testified that it was dark outside.

Defendant does not explain how McGruder's inaccurate statements or faded memories were detrimental to his defense. McGruder was the prosecution's most important witness in many ways, and the credibility of his testimony bore heavily on the trial court's ultimate conclusion. The defense adequately cross-examined McGruder related to his confusing testimony about the time of day and whether the sun had set when the shooting on Lappin Street occurred. This was one of many ways in which the defense attempted to undercut McGruder's credibility. McGruder's inaccurate or uncertain memory caused by the passage of time from the incident until trial would, if anything, have aided defendant in that attempt. Defendant has not demonstrated prejudice to his defense caused by the delay. *Id.*

In sum, the only factors favorable to the defense were the length of the delay, which was undoubtedly significant, and the personal prejudice suffered by defendant as a result of his pretrial incarceration. The remaining factors all weighed in favor of a determination that defendant's constitutional right to a speedy trial was not violated, especially given the complex and serious nature of the case. See *Barker*, 407 US at 530-531. In light of these factors, there was no plain error related to defendant's claim of a speedy trial violation. *Carines*, 460 Mich at 763; *Smith*, ___ Mich App at ___; slip op at 6.

## IV. PROSECUTORIAL MISCONDUCT

In his Standard 4 brief, defendant argues he is entitled to reversal of his convictions and a new trial because the prosecutor relied on perjured testimony or allowed a witness to tamper with evidence. We disagree.

"To preserve an issue of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction." *People v Isrow*, 339 Mich App 522, 529; 984 NW2d 528 (2021) (quotation marks, citation, and alterations omitted). There is no dispute in this case that defendant did not object to the alleged prosecutorial misconduct or request a curative instruction. Therefore, this argument is unpreserved. *Id.* "Claims of prosecutorial misconduct are generally reviewed de novo to determine whether the defendant was denied a fair trial." *People v Dunigan*, 299 Mich App 579, 588; 831 NW2d 243 (2013). But we review unpreserved allegations of prosecutorial misconduct for plain error affecting a defendant's substantial rights. *People v Anderson*, 331 Mich App 552, 565; 953 NW2d 451 (2020).

"A prosecutor 'is the representative . . . of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.' " *People v Evans*, 335 Mich App 76, 89; 966 NW2d 402 (2020), quoting *Berger v United States*, 295 US 78, 88; 55 S Ct 629; 79 L Ed 1314 (1935). "We must evaluate instances of prosecutorial misconduct on a case-by-case basis, reviewing the prosecutor's [actions] in context and in light of the defendant's arguments." *People v Lane*, 308 Mich App 38, 62-63; 862 NW2d 446 (2014). "Generally, '[p]rosecutors are accorded great latitude regarding their arguments and conduct.' " *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995) (citation omitted). A prosecutor "need not speak in the blandest of all possible terms" when arguing the case. *People v Blevins*, 314 Mich App 339, 355; 886 NW2d 456 (2016) (quotation marks and citation omitted).

> It is well settled that a conviction obtained through the knowing use of perjured testimony offends a defendant's due process protections guaranteed under the Fourteenth Amendment. If a conviction is obtained through the knowing use of perjured testimony, it must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. Stated differently, a conviction will be reversed and a new trial will be ordered, but only if the tainted evidence is material to the defendant's guilt or punishment. Thus, it is the misconduct's effect on the trial, not the blameworthiness of the prosecutor, which is the crucial inquiry for due process purposes. The entire focus of our analysis must be on the fairness of the trial, not on the prosecutor's or the court's culpability. [*Bass*, 317 Mich App at 272-273 (citation omitted).]

-9-

In addition to the prohibition against using false testimony, "a prosecutor has an *affirmative duty* to correct patently false testimony, especially when that testimony conveys to the jury an asserted confession from the defendant." *People v Brown*, 506 Mich 440, 446; 958 NW2d 60 (2020) (quotation marks and citation omitted). "The responsibility 'does not cease to apply merely because the false testimony goes only to the credibility of the witness.' " *People v Smith*, 498 Mich 466, 476; 870 NW2d 299 (2015), quoting *Napue v Illinois*, 360 US 264, 269; 79 S Ct 1173; 3 L Ed 2d 1217 (1959). "A new trial is required if the uncorrected false testimony could . . . in any reasonable likelihood have affected the judgment of the jury." *Brown*, 506 Mich at 447 (quotation marks and citation omitted; alteration in original). A defendant bears the burden of furnishing the reviewing court with a record to verify the factual basis of his claim of prosecutorial misconduct. *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000). More specifically, as related to the claim of using false testimony, he has the "burden of demonstrating that [the challenged] testimony was actually false . . . ." *Bass*, 317 Mich App at 274.

Defendant argues that the prosecution allowed McGruder to present false testimony in several ways. He argues that McGruder falsely claimed that he was playing video games with Berrien shortly before the shooting on Lappin Street. He further argues that the evidence at trial did not show that any video-game console was found in McGruder's home, and he asserts that the home did not have electricity. Defendant has failed to demonstrate that McGruder's challenged testimony was false. *Id.* There are many plausible explanations consistent with finding McGruder's testimony truthful, including that the video-game console simply was not noted in the police reports or that McGruder and Berrien were playing video games on a cell phone instead of a console. Moreover, defendant was required to identify alleged false testimony regarding a *material* issue. *Bass*, 317 Mich App at 272-273. Whether McGruder and Berrien were playing video games before the shooting was not material, and undermining that testimony would serve no purpose other than to tangentially attack McGruder's credibility. Given this lack of relevance, defendant has not shown plain error. *Anderson*, 331 Mich App at 565. This is true also for defendant's alternative argument that McGruder may have tampered with evidence by removing a video-game console from the home.

Defendant also claims that the prosecution allowed perjured testimony when McGruder testified that the shooting happened during broad daylight. This claim is not supported by the record. *Elston*, 462 Mich at 762. Pertinently, the testimony in question was not elicited by the prosecution—instead, it was offered during defense counsel's cross-examination of McGruder. Further, on redirect examination, the prosecution sought to clarify McGruder's testimony about the time of the shooting. Initially, the prosecution had McGruder acknowledge that the shooting occurred a long time before trial. The prosecution also obtained an admission from McGruder that he did not have a watch on the day of the shooting, so he did not specifically recall at what time it occurred. Lastly, the prosecution asked McGruder whether, in light of the length of time that had passed, he would trust the cell phone records more than his memory. McGruder agreed. As a result, defendant's claim the prosecution attempted to or did rely on uncorrected perjurious testimony from McGruder is simply untrue. Defendant has not demonstrated plain error. *Anderson*, 331 Mich App at 565.

## V. EXPERT OPINION TESTIMONY

Defendant also argues in his Standard 4 brief that the trial court erred by permitting the expert opinion testimony of Sergeant Robert Skender regarding cellular site location information (CSLI) mapping. We disagree.

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019). Defendant did not object to Sergeant Skender's qualification as an expert witness or to his expert opinion testimony related to CSLI. As a result, this issue is unpreserved. *Id*. When preserved, this Court "reviews for an abuse of discretion a circuit court's decision to admit or exclude evidence." *People v Kowalski*, 492 Mich 106, 119; 821 NW2d 14 (2012). However, because this evidentiary argument is unpreserved, "defendant must show a plain error that affected substantial rights." *Thorpe*, 504 Mich at 252.

"MRE 702 establishes prerequisites for the admission of expert witness testimony." *Kowalski*, 492 Mich at 119. "A court considering whether to admit expert testimony under MRE 702 acts as a gatekeeper and has a fundamental duty to ensure that the proffered expert testimony is both relevant and reliable." *People v Skippergosh*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 364127); slip op at 18 (quotation marks and citation omitted). "MRE 702 incorporates the standards of reliability that the United States Supreme Court established in *Daubert v Merrell Dow Pharm, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993), in interpreting the equivalent federal rule of evidence." *People v Muhammad*, 326 Mich App 40, 51-52; 931 NW2d 20 (2018), citing *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 781-782; 685 NW2d 391 (2004).

"The court may admit evidence only once it ensures, pursuant to MRE 702, that expert testimony meets that rule's standard of reliability." *People v Lane*, 308 Mich App 38, 52; 862 NW2d 446 (2014) (quotation marks, citations, and brackets omitted). Experts are not permitted to testify under MRE 702 "unless the trial court first determines that 'scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue' and the expert witness is 'qualified as an expert by knowledge, skill, experience, training, or education . . . .' " *People v Yost*, 278 Mich App 341, 393; 749 NW2d 753 (2008). When evaluating MRE 702 and *Daubert*, our Supreme Court has stated that a trial court is required to verify "that the testimony (1) will assist the trier of fact to understand a fact in issue, (2) is provided by an expert qualified in the relevant field of knowledge, and (3) is based on reliable data, principles, and methodologies that are applied reliably to the facts of the case." *Kowalski*, 492 Mich at 120. "The purpose of this test is to ensure that a jury is not relying on unproven and ultimately unsound scientific methods." *Lane*, 308 Mich App at 52 (quotation marks and citation omitted). "The standard focuses on the scientific validity of the expert's methods rather than on the correctness or soundness of the expert's particular proposed testimony." *Unger*, 278 Mich App at 217-218, citing *Daubert*, 509 US at 589-590. For example, "[e]xpert testimony may be excluded when it is based on assumptions that do not comport with the established facts or when it is derived from unreliable and untrustworthy scientific data." *People v Dobek*, 274 Mich App 58, 94; 732 NW2d 546 (2007). "An expert's opinion is admissible if it is based on the 'methods and procedures of science' rather than 'subjective belief or unsupported speculation.' " *Unger*, 278 Mich App at 218, quoting *Daubert*, 509 US at 590.

Ultimately, the trial court's determination regarding whether it requires a *Daubert* hearing to determine the admissibility of expert testimony is within the trial court's discretion. *Unger*, 278 Mich App at 216-217; see also *Kumho Tire Co, Ltd v Carmichael*, 526 US 137, 152; 119 S Ct 1167; 143 L Ed 2d 238 (1999). "While the exercise of the gatekeeper function is within a court's discretion, the court may neither abandon this obligation nor perform the function inadequately." *Dobek*, 274 Mich App at 94, citing *Gilbert*, 470 Mich at 780.

In this case, defendant challenges only the third requirement for the admission of expert testimony found in *Kowalski*, 492 Mich at 120—whether the expert testimony "is based on reliable data, principles, and methodologies that are applied reliably to the facts of the case." Defendant argues that Sergeant Skender's opinion regarding the position of defendant's and Kennedy's cell phones based on cellular tower data was based on unreliable data, or was simply unreliable. Our review of the record shows that Sergeant Skender formed his opinion on the basis of reliable principles, used appropriate methods, and properly applied those to the data given to him by the cellular companies. Sergeant Skender acknowledged the limitations of what the data and his mapping could tell the trial court, including that the data only proved that a given cell phone had connected to a given tower at a given time. Although Sergeant Skender could determine the general area the cell phone was in at the time, he could not say who was using the cell phone or exactly where they were. For this reason, Skender properly confined his expert opinion to his determination that defendant's and Kennedy's cell phones appeared to have traveled from the area where the original shooting occurred, to the area where Berrien's body was found, and then back during a certain time period.

Although defendant points out several of the limitations or uncertainties in Skender's testimony, the trial court's gatekeeper role is not to determine whether the expert's testimony is *correct*, but just that it relies on reliable principles and methods. See *Unger*, 278 Mich App at 217 (quotation marks omitted) ("[T]he trial court's role as gatekeeper does not require it to search for absolute truth, to admit only uncontested evidence, or to resolve genuine scientific disputes."). Defendant's arguments go to the weight of Sergeant Skender's testimony and not its admissibility.

We also disagree with defendant's argument that a *Daubert* hearing was required. As the United States Supreme Court has explained, the trial court has "discretionary authority to avoid unnecessary 'reliability' proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted . . . ." *Kumho Tire Co*, 526 US at 152. In this case, defendant did not challenge Sergeant Skender's testimony at the time of trial. Further, expert testimony of this sort based on cellular tower data and mapping has been approved by this Court in the past, albeit in unpublished opinions. Defendant has not demonstrated that the trial court should have sua sponte ordered a *Daubert* hearing to determine whether Sergeant Skender's testimony was admissible. *Kumho Tire Co*, 526 US at 152.

VI. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, defendant argues in his Standard 4 brief that his trial counsel was ineffective in several ways. We disagree.

A claim of ineffective assistance of counsel can be preserved "by moving in the trial court for a new trial or an evidentiary hearing," *People v Head*, 323 Mich App 526, 538-539; 917 NW2d

752 (2018), or by moving this Court to remand for an evidentiary hearing, *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). As is evident from the record, defendant did none of these things. As a result, our review is limited to errors apparent on the record. *Id.*; *Head*, 323 Mich App at 538-539; see also *People v Spaulding*, 332 Mich App 638, 656; 957 NW2d 843 (2020).

"Claims of ineffective assistance of counsel present mixed questions of fact and law." *People v Carson*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 355925); slip op at 7. Factual findings are reviewed for clear error, while questions of constitutional law are reviewed de novo.

"A defendant's right to counsel is guaranteed by the United States and Michigan Constitutions," and the "right to counsel encompasses the right to the effective assistance of counsel." *People v Muniz*, 343 Mich App 437, 447-448; 997 NW2d 325 (2022), citing US Const, Am VI; Const 1963, art 1, § 20. "The effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *Muniz*, 343 Mich App at 448 (quotation marks, citation, and alterations omitted). The United States Supreme Court has held that "to receive a new trial on the basis of ineffective assistance of counsel, a defendant must establish that 'counsel's representation fell below an objective standard of reasonableness' and that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012), quoting *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "When reviewing defense counsel's performance, the reviewing court must first objectively 'determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.' " *People v Jackson (On Reconsideration)*, 313 Mich App 409, 431; 884 NW2d 297 (2015), quoting *Strickland*, 466 US at 690. "Next, the defendant must show that trial counsel's deficient performance prejudiced his defense—in other words, that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Jackson*, 313 Mich App at 431, quoting *Vaughn*, 491 Mich at 669.

"This Court will not find trial counsel to be ineffective where an objection would have been futile; nor will it second-guess matters of trial strategy." *People v Ogilvie*, 341 Mich App 28, 34; 989 NW2d 250 (2022). "Furthermore, because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *People v Muhammad*, 326 Mich App 40, 63; 931 NW2d 20 (2018) (quotation marks, citation, and alteration omitted).

## A. SPEEDY TRIAL

Defendant claims trial counsel should have raised the speedy trial issue with the trial court. But, as discussed above, defendant's constitutional right to a speedy trial was not violated in this case. Our conclusion would not have been different had defendant raised this issue below. Accordingly, defense counsel was not ineffective for failing to raise a futile objection. *Ogilvie*, 341 Mich App at 34.

Defendant alternatively argues we should remand for a *Ginther*[3] hearing on this issue. We disagree. A *Ginther* hearing is not warranted when the "defendant has not set forth any additional facts that would require development of a record to determine if defense counsel was ineffective . . . ." See *People v Williams*, 275 Mich App 194, 200; 737 NW2d 797 (2007). Defendant's sole explanation of the need for a *Ginther* hearing is for his trial counsel to explain why she did not move for dismissal on the basis of a speedy trial violation. But an explanation of his trial counsel's reasoning is not necessary for the determination of whether a speedy-trial motion would have been futile. Accordingly, defendant's request for a *Ginther* hearing on this ground lacks merit. *Williams*, 275 Mich App at 200.

## B. EXPERT OPINION TESTIMONY

Defendant argues that trial counsel was ineffective for failing to object to the testimony of Sergeant Skender or to request a *Daubert* hearing. We disagree. Any objection to the admission of Sergeant Skender's expert testimony, or a request for a *Daubert* hearing, would have been futile. *Ogilvie*, 341 Mich App at 34.

## C. LESSER-INCLUDED OFFENSE INSTRUCTION

Defendant also argues that trial counsel was ineffective for not requesting an instruction regarding the lesser-included offense of involuntary manslaughter. We disagree.

"While jurors are not presumed to know the law applicable to a case, Michigan law presumes that a trial judge sitting as finder of fact is 'aware of lesser-included offenses without the need for instruction.' " *People v Jones*, 497 Mich 155, 171; 860 NW2d 112 (2014), quoting *People v Cazal*, 412 Mich 680, 686-687; 316 NW2d 705 (1982). Because this was a bench trial, there was no need for trial counsel to request an instruction regarding the lesser-included offense of involuntary manslaughter, and counsel was not ineffective for failing to do so. *Jones*, 497 Mich at 171.

## D. CHALLENGES RELATED TO MCGRUDER'S TESTIMONY

Defendant also challenges trial counsel's investigation of the case and cross-examination of witnesses. Defendant has not established that his counsel was ineffective.

"At the outset, we note the important proposition that '[d]ecisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy.' " *Muhammad*, 326 Mich App at 66, quoting *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). In addition to not substituting our judgment for trial counsel, we also will not "assess counsel's competence with the benefit of hindsight." *People v Rosa*, 322 Mich App 726, 742; 913 NW2d 392 (2018) (quotation marks and citation omitted). "But a court cannot insulate the review of counsel's performance by calling it trial strategy[.]" *People v Ackley*, 497 Mich 381, 388-389; 870 NW2d 858 (2015) (quotation marks and citation omitted). "Initially, a

---

[3] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

court must determine whether the strategic choices were made after less than complete investigation, and any choice is reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Thurmond*, ___ Mich App at ___; slip op at 12 (quotation marks and citation omitted). In that respect, "counsel's strategy must be sound, and the decisions as to it objectively reasonable." *Ackley*, 497 Mich at 389.

Defendant argues that his trial counsel should have further investigated McGruder's testimony that he was playing video games with Berrien before the shooting on Lappin Street occurred. Had she done so, defendant argues, she would have discovered that McGruder's home did not have electricity and that no video-game console was found when the police searched the home. Defendant has not provided a factual basis for this claim. *Muhammad*, 326 Mich App at 63. Moreover, even assuming the home lacked electricity and that McGruder did not have a video-game console, the limited legal relevance of McGruder's claim that he and Berrien were playing video games before the shooting renders reasonable trial counsel's strategy of focusing on other aspects of the case. *Ackley*, 497 Mich at 389. The important part of McGruder's testimony in this respect was that McGruder was with Berrien shortly before the shooting; their actual activity was not at issue. Even if trial counsel had undermined McGruder's testimony about playing video games, it would not have been useful to the defense other than to tangentially attack his credibility. As a result, trial counsel's decision to focus her efforts elsewhere and on issues that were relevant to the case, was reasonably strategic. *Id*.

Defendant also argues that trial counsel should have asked McGruder why he did not tell Berrien's family members about Berrien being shot. Once again, defendant has not established a factual predicate for his claim. *Muhammad*, 326 Mich App at 63. Although defense counsel did not specifically ask McGruder about whether he had spoken with the Berrien's family, he did ask McGruder generally why he did not report the shooting to anyone. In response, McGruder stated that he thought Berrien was being taken to safety by defendant and Kennedy, and that Berrien had told McGruder not to say anything about the shooting after it occurred. Defendant has not established that a more specific question would have yielded a significantly different answer. *Id*.

Defendant also argues that trial counsel was ineffective in failing to ask McGruder how bullet strikes (marks caused by bullets striking a hard surface) came to be on the house on Lappin Street. Defendant has not established that McGruder's answer would have been relevant or favorable to defendant, and has accordingly failed to establish the factual basis for his claim. *Muhammad*, 326 Mich App at 63.

Defendant argues that trial counsel should have cross-examined McGruder about his claim that his cell phone was dead at the time of the shooting on Lappin Street. But the record shows that McGruder was challenged regarding this testimony. On cross-examination, McGruder was confronted with his statement to police that he went back inside the residence at one point after the shooting to find his cell phone. McGruder stated he did not remember saying that to the police, and that he would not have gone to look for his cell phone because he knew that it was dead. McGruder explained that he knew this because he had not been paying for the cell phone. Because the record does not support defendant's argument, it fails. *Id*. Moreover, defendant has not explained how trial counsel employed unreasonable trial strategy by not pushing further on the questioning. The result was achieved—McGruder acknowledged that the recording of his statement to police differed from his trial testimony. In this situation, defendant has failed to

-15-

overcome the presumption of reasonable trial strategy. *Id*. We will not judge trial counsel's strategic decisions with the benefit of hindsight. *Rosa*, 322 Mich App at 742.

Defendant's also argues that trial counsel should have gone to McGruder's home as part of the pretrial investigation. Defendant has not established the factual basis for his claim, i.e., he has not established that trial counsel *did not* investigate McGruder's home in person. *Muhammad*, 326 Mich App at 63. Further, defendant has not cited to any evidence showing that, had trial counsel investigated the home personally, the results of the proceedings against him would have been different. Accordingly, defendant has not established that his trial counsel was ineffective regarding this issue. *Vaughn*, 491 Mich at 669.

## E. FAILURE TO INVESTIGATE AND OBTAIN EVIDENCE

Defendant claims that his trial counsel was ineffective for failing to investigate Christopher Brown as a witness. Defendant asserts that Brown would have testified that the reason defendant was not truthful with Berrien-Wadley or the police about Berrien's location was because defendant was wanted by the police. Defendant has not provided an offer of proof or other evidence to establish the factual basis for this claim. *Muhammad*, 326 Mich App at 63. Moreover, the record shows that defendant spoke to Berrien-Wadley twice before the police were involved, yet gave her false information both times. Defendant has not established that testimony showing that he was wanted by police for an unrelated crime would have altered the results of the proceedings against him. *Vaughn*, 491 Mich at 669.

Defendant also argues that his trial counsel failed to adequately investigate and present evidence related to the possibility of another shooter. More specifically, defendant alleges that trial counsel should have obtained evidence showing that the bullet strike marks on McGruder's home were consistent with guns being fired from the street, not from the driveway, which was where defendant was standing. Further, trial counsel should have investigated the claim that a black Buick Regal had been seen on Lappin Street shortly before the shooting occurred. Once again, defendant has not established the factual predicate for these claims. *Muhammad*, 326 Mich App at 63. Defendant only speculates that bullet strike marks on the home indicated that guns were fired from the street, and does not explain who would have testified about a black Buick Regal being on Lappin Street. Neither of the witnesses who testified to hearing the gunshots and seeing Berrien after he was shot testified regarding any vehicles they observed on the street at the time. Because defendant had to bear his burden of providing a factual predicate for his claim and overcoming the presumption of effective assistance of counsel, this claim fails. *Id*.

## F. PLEA-OFFER ADVICE

Defendant also argues that his trial counsel should have given him better advice about whether to accept the prosecution's plea offer. We disagree. This Court recently provided the following explanation of the law regarding claims of ineffective assistance of counsel on the basis of plea advice:

> In *People v Douglas*, 496 Mich 557, 591-592; 852 NW2d 587 (2014), our Supreme Court explained what a defendant must establish to prove ineffective assistance of counsel in the context of a plea offer. First, "that counsel's

representation fell below an objective standard of reasonableness . . . ." *Id*. at 592. And, second, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. In demonstrating prejudice, the "defendant must show the outcome of the plea process would have been different with competent advice." *Id*. Where, as here, the alleged prejudice resulting from counsel's ineffectiveness is that the defendant rejected a plea offer and stood trial,

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed. [*Id*.]

> When evaluating a plea offer, "[d]efense counsel must explain to the defendant the range and consequences of available choices in sufficient detail to enable the defendant to make an intelligent and informed choice." *People v Jackson*, 203 Mich App 607, 614; 513 NW2d 206 (1994). [*Thurmond*, ___ Mich App at ___; slip op at 14 (alterations in original).]

On the first day of trial, the prosecution informed the trial court that defendant had been offered a deal requiring him to plead guilty to second-degree murder and felony-firearm in exchange for dismissal of the felon-in-possession charge and the prosecution recommending a below-guidelines minimum sentence of 18 years for second-degree murder. After a discussion of the offer on the record, defendant reiterated his desire to go to trial.

Defendant argues that his trial counsel failed to inform him that he could be convicted without an eyewitness to the shooting or as an aider and abettor. Defendant has not provided an offer of proof or other evidence of what his trial counsel did nor did not tell him regarding the plea offer, and accordingly has failed to establish the factual predicate for this claim. *Muhammad*, 326 Mich App at 63 (quotation marks, citation, and alteration omitted). Further, defendant does not argue that he would have accepted the plea offer; indeed, defendant continues to insist on his innocence in this case. When a defendant claims ineffective assistance of counsel related to plea deals, he must prove that the deal would have been accepted with competent advice and would have benefited his position. While, viewed in hindsight, accepting the plea deal would have undoubtedly resulted in a better outcome than the one defendant received after trial, there is no evidence that defendant would have accepted the plea. *Thurmond*, ___ Mich App at ___; slip op at 14.

## G. *GINTHER* HEARING

Defendant also argues generally that, in the alternative, this Court should remand for a *Ginther* hearing regarding his trial counsel's alleged ineffectiveness. We disagree. "[R]emand [for a *Ginther* hearing] is not warranted if a defendant fails to demonstrate that further factual

development will advance his position or if a defendant fails to identify facts that could provide a basis for relief." *Thurmond*, ___ Mich App at ___; slip op at 12 (citations omitted). As noted above, for all of the claims of ineffective assistance of counsel, defendant has not provided this Court with any offers of proof. Instead, he has relied solely on the assertions made in his Standard 4 brief. This is insufficient. *Id*. at ___; slip op at 14-15 ("Defendant has not submitted an affidavit or other offer of proof addressing any of these matters. The unsupported allegations in defendant's Standard 4 brief are insufficient to establish the factual predicate for this claim, or to justify a remand for an evidentiary hearing.").

Affirmed.

/s/ Mark T. Boonstra
/s/ Kirsten Frank Kelly
/s/ Adrienne N. Young